# EXHIBIT 2

<pre>
 1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE EASTERN DISTRICT OF TEXAS
 2                            MARSHALL DIVISION

 3    SOLAS OLED, LTD.,              (   CAUSE NO. 2:21-CV-105-JRG
                                     )
 4              Plaintiff,           (
                                     )
 5    vs.                            (
                                     )
 6    SAMSUNG ELECTRONICS CO., LTD,  (
      et al.,                        )   DECEMBER 16, 2021
 7                                   (   MARSHALL, TEXAS
                Defendants.          )   1:30 P.M.
 8    _____

 9

10

11

12

13    _____

14                           MARKMAN HEARING

15              BEFORE THE HONORABLE RODNEY GILSTRAP
                 UNITED STATES CHIEF DISTRICT JUDGE
16    _____

17

18

19

20

21

22              SHAWN M. McROBERTS, RMR, CRR
                   100 E. HOUSTON STREET
                   MARSHALL, TEXAS  75670
23                    (903) 237-7464
               shawn_mcroberts@txed.uscourts.gov
24

25
</pre>

```
 1                      A P P E A R A N C E S

 2          FOR PLAINTIFF:        RUSS AUGUST & KABAT -
                                  LOS ANGELES
 3                                12424 WILSHIRE BOULEVARD
                                  12TH FLOOR
 4                                LOS ANGELES, CALIFORNIA 90025
                                  (310) 826-7474
 5                                BY:  MR. CHRISTIAN CONKLE

 6                                WARD, SMITH & HILL, PLLC
                                  1507 BILL OWENS PARKWAY
 7                                LONGVIEW, TEXAS  75604
                                  (903) 757-6400
 8                                BY:  MS. CLAIRE HENRY

 9          FOR DEFENDANTS:       O'MELVENY & MYERS LLP -
                                  NEWPORT BEACH, CA
10                                610 NEWPORT CENTER DRIVE
                                  17TH FLOOR
11                                NEWPORT BEACH, CA 92660
                                  (949) 760-9600
12                                BY:  MR. JOHN KAPPOS

13                                O'MELVENY & MYERS LLP - LA
                                  400 SOUTH HOPE STREET
14                                18Th FLOOR
                                  LOS ANGELES, CALIFORNIA 90071
15                                (213) 430-6000
                                  BY:  MS. NANCY SCHROEDER
16
                                  GILLAM & SMITH, LLP
17                                102 N. COLLEGE, SUITE 800
                                  TYLER, TEXAS  75702
18                                (903)934-8450
                                  BY:  MR. TOM GORHAM
19
            OFFICIAL REPORTER:    SHAWN M. McROBERTS, RMR, CRR
20                                100 E. HOUSTON STREET
                                  MARSHALL, TEXAS  75670
21                                (903) 923-7464

22

23

24

25
```

1              THE COURT:  Be seated, please.

2         This is the time set for claim construction in the Solas

3    OLED, Limited, versus Samsung Electronics Company, Limited, et

4    al., matter.  This is Civil Case No. 2:21-CV-105.

5         Let me ask for announcements at this time.

6         What says the Plaintiff?

7              MS. HENRY:  Good afternoon, Your Honor.  Claire

8    Henry on behalf of the Plaintiff.  I'm joined by my co-counsel

9    Christian Conkle.  We are ready to proceed.

10        And I will just apologize on the record in advance for

11   the state of the printout of the slides.  I did it myself, I

12   messed it up, but we have better copies that are coming now

13   that don't cut off the page number and about a 10th of the

14   text, but they are on their way over here.

15             THE COURT:  All right.  Thank you, Ms. Henry.

16        What's the announcement for the Defendants?

17             MR. GORHAM:  Good afternoon, Your Honor.  Tom Gorham

18   on behalf of the Defendants.  With me here today is Nancy

19   Schroeder and John Kappos of the O'Melveny & Myers firm.  Also

20   with us in the gallery today is John Girdwood, our client

21   representative.  Defendants are ready to proceed, Your Honor.

22             THE COURT:  All right.  Thank you, Mr. Gorham.

23        Counsel, I understand, based on the email traffic that's

24   been exchanged between you and my staff, that there has been

25   an agreement reached by the parties with regard to what would

1    have been the first term for argument today, being 'plurality

2    of gesture-interpretation-state modules' from claims 2, 3, and

3    6 of the patent-in-suit.  Is that correct?

4              MR. KAPPOS:  That is correct, Your Honor.

5              THE COURT:  All right.  I'd like to get somebody to

6    announce into the record what that agreement is and get the

7    other side to confirm it so that we can nail that down before

8    we proceed to our other disputed terms.

9              MR. KAPPOS:  Your Honor, John Kappos for the Samsung

10   Defendants.

11        The agreement is that the term 'plurality of

12   gesture-interpretation-state modules', the agreed to meaning

13   is 'two or more state modules for interpreting the time series

14   of data to recognize gestures'.

15             MR. CONKLE:  Thank you, Your Honor.  Christian

16   Conkle for Plaintiff.

17        Yes, that is agreed.

18             THE COURT:  All right.  Then based on those

19   representations, the Court will accept your agreement and

20   apply that as the construction to this disputed term language,

21   or previously disputed term language.

22        All right.  With that, let's turn to the two remaining

23   terms that need construction.  Let's move next to the

24   'position-processing logic being accommodated in and running

25   on the first integrated circuit, and the gesture-processing

1    logic being accommodated in and running on one or more

2    separate integrated circuits'.

3         Let me hear from Plaintiff on this first, and then I'll

4    hear from the Defendants.

5              MR. CONKLE:  Thank you, Your Honor.

6         So to set the stage for this dispute, I think it's

7    important to go back to independent claim 1.  The term we're

8    talking about is essentially all of claim 11, so I think to

9    get the context it's important to go back to claim 1.  And on

10   slide here, I've presented excerpts -- the relevant excerpts

11   of claim 1.

12        As you can see, claim 1, in large part, describes two

13   logics, each of which is executed on a processor and stored in

14   one or more tangible media.  The first logic is called the

15   position processing --

16        I'm sorry.  Is there some way I can adjust this?  I'm

17   getting feedback.

18              THE COURT:  I'm not hearing any feedback.

19              MR. CONKLE:  I'm glad to hear that.  I'll ignore it,

20   then.  Sorry about that.

21        The first logic is the position-processing logic, and the

22   second logic is the gesture-processing logic.  And as we'll

23   presumably discuss a little bit more later on, the role of the

24   position-processing logic is to determine where a touch is

25   physically, and the role of the gesture-processing logic is to

1   recognize gestures.

2        The patentee understood--and this is described a little

3   bit in the specification, and, in fact, one of these two

4   possibilities is even described in the abstract--that there

5   are two ways of physically realizing this pair of logics, and

6   those possibilities are captured in claims 10 and 11.  One,

7   you can have them both on the same integrated circuit; two,

8   you can split them between separate integrated circuits.  And

9   claims 10 and 11 straight forwardly claim both of those

10  things.  Claim 10 is not itself at issue here.  I'm just using

11  it for illustration.

12       And so we see in claim 11 a sort of parallelism with the

13  standard logic claim language that we see in the independent

14  claim, whereas in the independent claim we have logic that is

15  executed by a processor and stored in a tangible medium.  In

16  claims 10 and 11, there's a narrowing requiring that the

17  position-processing logic, for example, be accommodated in and

18  running on a first integrated circuit, and the

19  gesture-processing logic being accommodated in and running on

20  one or more separate integrated circuits.

21       Next slide, please, Ms. Henry.

22            THE COURT:  Why don't you tell me this.

23            MR. CONKLE:  Yes.

24            THE COURT:  It seems to me that the gravamen of the

25  dispute on this term is whether 'accommodated in' is

1    indefinite or not.

2         MR. CONKLE:  Correct.

3         THE COURT:  And I understand we've got a clear and

4    convincing standard here, but give me your best argument for

5    why that's not indefinite.

6         MR. CONKLE:  Sure.

7      Would you turn to the next slide, Ms. Henry?

8         MR. CONKLE:  I think, frankly, this excerpt from

9    Samsung's brief, and which closely parallels the opinion of

10   their expert, shows that there is a lot of agreement as to

11   what the possibilities for the meaning of 'accommodated in'

12   are.  Each of their examples begin the same way.  Being

13   accommodated in means that some or all of the position

14   processing logic is in RAM, a form of memory; being

15   accommodated in means that -- instead means that some or all

16   of the position-processing logic is in non-volatile memory;

17   being accommodated in means that some or all of the

18   position-processing logic is in DRAM, again a form of memory.

19     I think it's -- as reflected by the opinion of the

20   expert, we understand what it means for logic to be in

21   something.  It means that it's stored in a memory that

22   is -- you know, and then, you know, we have the initial

23   dispute about -- perhaps a dispute about what 'in' means, but

24   I think 'accommodated' is quite clear both from context -- I

25   mean, I can get into the extrinsic dictionary definitions, but

1    you asked for the best argument, and I think, frankly, the

2    best argument is even their expert says, Look, here's the

3    scope of potential disagreements, and I think all three of

4    those possibilities fit clearly within what we say is the

5    plain and ordinary meaning of the term.

6         THE COURT:  Do you think there is a live dispute

7    between the parties with regard to the word 'in' as opposed to

8    'accommodated'; and if you do, what's your position on that?

9         MR. CONKLE:  I don't know, but I can briefly state

10   our position and see where Defendants are at the moment.

11        Ms. Henry, if I could have slide 5.

12        It seems that the issue that I expect Samsung will

13   present as the primary indefiniteness question is whether a

14   memory that is accessed by an integrated circuit as opposed to

15   being of, or I would say in, the integrated circuit falls

16   within the claim scope.  And I think just based on plain

17   English, that is not the case.  Something that is accessed by

18   is not in.  There might be an embodiment where it's also

19   accessed by, but the -- how to put this.  It's just a word.

20   It says 'in'.  I think the logic has to be in the integrated

21   circuit.

22        THE COURT:  Of course, the Defendants didn't argue,

23   that I can tell, that the language is indefinite; but in the

24   alternative, if the Court finds it's not indefinite, this is a

25   better construction.  I didn't get that here.

1        MR. CONKLE:  That's my understanding.

2        THE COURT:  All right.  What else do you have for me

3   on this, counsel?

4        MR. CONKLE:  Just a brief point to make.

5     Ms. Henry, if we can go back to slide 4.

6     I don't think that there's a dispute, but there might be,

7   and I wanted to put my toe in the sand.

8     You know, I had said that the first halves of the three

9   proposed definitions are sort of the same, and, of course,

10  that's not quite sure.  They give three different examples of

11  random access memory, non-volatile memory, and DRAM, and then

12  I have them highlighted, but also the question of a hard drive

13  or flash memory.  I don't think that they're proposing and I

14  don't think there's really a dispute about whether

15  'accommodated in', either by plain and ordinary meaning or

16  lexicography, is limited to some particular type of memory.  I

17  think our position would be that it is not, but I don't know

18  that that's a dispute.

19     Unless you have other questions, I will --

20        THE COURT:  All right.  Let me hear from the

21  Defendants, please.

22        MR. CONKLE:  Thank you.

23        MS. SCHROEDER:  And while we wait for that to boot

24  up, my name is Nancy Schroeder from O'Melveny & Myers for the

25  Defendants, the Samsung Defendants.

1      THE COURT:  Pull the microphone a little closer to

2  you, Ms. Schroeder, please.

3      MS. SCHROEDER:  Is that better to hear?

4      THE COURT:  It's a little better.

5      MS. SCHROEDER:  Your Honor, to get right into the

6  'accommodated in' term, I'd start by noting that Solas does

7  here propose two separate positions, one being--and this was

8  expressed in their original brief--that there was no

9  construction necessary, and the alternative position proposing

10  construction that 'logic being accommodated in integrated

11  circuits' would mean some or all of the claimed logic is in

12  memory in the claimed integrated circuits.  Samsung takes

13  issue with both of those -- both of Solas' positions, but I

14  want to start with where perhaps the parties agree, and this

15  is to focus on where the parties, in our view, are actually

16  set apart.

17      First of all, and this is turning to slide 7, the parties

18  agree that based on the claim language, the terms

19  'accommodated in 'and 'running on' mean different things.

20  Right?  The -- and then -- and, second, the parties agree that

21  the logics that Mr. Conkle described as two separate logics

22  for Your Honor, the position-processing logic and the

23  gesture-processing logic, we -- the parties agree that those

24  can, in light of the terms in claims 10 and 11, that those two

25  logics can be present or accommodated in the same or different

1    separate integrated circuits.

2        And then, finally, based on Solas' briefing, the parties

3    appear to agree that the patent and the intrinsic record don't

4    provide an express definition of the term 'accommodated in'.

5    And the intrinsic record -- that the patent does not provide

6    any examples on which the term 'accommodated in' may be read.

7        So this boils down to -- the dispute between the parties

8    is Samsung's position is not that it real boils down to the

9    word 'in', but, rather, that it is the term 'accommodated in',

10   and that we're no closer to really understanding what that

11   term means, despite where the parties do agree.

12       Moving to slide 8 --

13           THE COURT:  Let me ask you this, counsel.  It's

14   clearly your burden to show the Court by clear and convincing

15   evidence that this is indefinite.  You're not relying or

16   putting forth any intrinsic evidence here.  I'm aware of some

17   dictionaries that you've relied on as extrinsic sources.  But

18   how do you believe you've met your burden to establish by

19   clear and convincing evidence that this language is

20   indefinite?

21           MS. SCHROEDER:  So I'd start, Your Honor, with the

22   fact that Samsung did provide an unrebutted -- unrebutted

23   testimony from their expert Doctor Baker, and it was his

24   position as a person of ordinary skill in the art with respect

25   to the '767 Patent at the time it was of the invention that

1    there is no plain and ordinary meaning of the term

2    'accommodated in' in the context of the patent.

3         Yes, Solas does point to the two dictionary definitions.

4    Now, those dictionary definitions don't represent the fact

5    that Samsung is taking -- is agreeing that there is a -- that

6    those dictionary definitions exemplify the plain and ordinary

7    meaning of 'accommodated in' with respect to the context of a

8    patent.  We would agree that those -- what those dictionary

9    definitions indicate is that to the extent there is a plain

10   and ordinary meaning of the term 'accommodated in', it's not

11   in the context of the patent; it may be in the context of a

12   different industry.

13        So I'll point to -- if I move to slide 11.

14             THE COURT:  Well, other than 'store' or 'contain',

15   how else could 'accommodated in' be understood by a person of

16   ordinary skill in the art in this context?

17             MS. SCHROEDER:  Well --

18             THE COURT:  I mean, what else could it mean?

19             MS. SCHROEDER:  Well, I don't take Solas to be

20   proposing that the term means 'stored' or 'contained in'.

21   They haven't proposed that as an alternative construction.

22   Instead --

23             THE COURT:  I understand.  But at the end of the

24   day, it's my job to construe the language whether I get good

25   suggestions from the parties or I don't get good suggestions

1    from the parties.  So the Court's not limited to what the

2    Plaintiffs proposed here anymore than I am to what your

3    briefing and arguments say.  I just don't know how a person of

4    ordinary skill could view 'accommodated in' other than to mean

5    'store' or 'contain'.  But I'd like your candid reaction to

6    that, if I could get it.

7              MS. SCHROEDER:  Well, I think if we -- in terms of

8    determining the meaning of a claim, we need to look at the

9    intrinsic record first, starting with the claims, then moving

10   to the specification and the prosecution history.

11             THE COURT:  Sounds like *Phillips*.

12             MS. SCHROEDER:  The claims don't identify and they

13   don't provide any indication as to the meaning of

14   'accommodated in', other than the fact that the parties agree

15   that 'accommodated in' and 'running on' don't mean the same

16   thing.

17        Now, if we move to the specification, and for this I'll

18   just flip to slide 9, the specification does include and does

19   use the term 'accommodated in', but it's merely a

20   regurgitation of the claim language from claims 10 and 11, so

21   there's no further explanation in the specification that adds

22   any further clarity.  So we're still at that point where there

23   is no guide to a person of skill in the art as to claim scope.

24        And I'll note, again, that the expert testimony, which I

25   recognize is extrinsic, but the expert testimony in this case

1   is unrebutted from Solas; they did not put in a declaration

2   from an expert to rebut the fact that a person of ordinary

3   skill in the art doesn't understand a plain and ordinary

4   meaning of 'accommodated in' in the context of the patent.

5        But just to close out the intrinsic record, the file

6   history here, Solas in their briefing point to the fact that

7   during the prosecution the examiner issued a rejection on

8   § 103 grounds against the original claims 10 and 11, which

9   issued, I'll add, essentially unchanged from the original

10  language.  But the examiner issued a § 103 rejection, and

11  pointed to a reference called Wright, and said that

12  Wright--and this is shown in the top quote on slide 10--that

13  Wright disclosed the position-processing unit is accommodated

14  in and runs on a first integrated circuit.  And the point in

15  Wright that was cited to by the examiner is a line that says,

16  "processing device 210 may reside on a common carrier

17  substrate."

18       So essentially here what the examiner does is ties

19  Wright's disclosure of, quote, 'reside on' to both

20  'accommodated in' and 'runs on', as were used in the

21  originally filed claims.

22       Now, in response to that rejection, applicant did not

23  correct or embrace or distinguish in any way the examiner's

24  statement about 'residing on' reading on both 'accommodated

25  in' and 'runs on'.  Now, the problem here is, is that the

1    parties agree, and Solas has stated in front of Your Honor and

2    in their briefing, that 'accommodated in' and 'runs on' don't

3    mean the same thing, so then how can the term 'reside on', as

4    proposed by -- or as pointed to by the examiner tell us what

5    the meaning of 'accommodated in' means in those claims.

6         And so that's the only example that Solas has pointed to

7    in any of the extrinsic record -- or intrinsic record, I'm

8    sorry -- that's the only example they've attempted to point to

9    to provide any meaning for the word 'accommodated in'.

10        And so then at that --

11             THE COURT:  Well, and the fact that the parties seem

12   to agree that 'accommodated in' and 'running on' don't mean

13   the same things, just tells me that in this context

14   'accommodated in' and 'running on' aren't superfluous; they

15   aren't just redundant, that 'accommodated' is different than

16   'running on'.  But that's a long way from telling me it's

17   indefinite and nobody knows what it means and can't construe

18   it and can't understand it.

19             MS. SCHROEDER:  Well, I think -- I mean, Samsung

20   would go back to, again, the language of the examiner.  So

21   Solas wants to rely on the fact that the examiner was able to

22   issue a § 103 rejection, and that means that they understood

23   what the term 'accommodated in' means, but there is a clear

24   conflict between what the examiner understood 'accommodated

25   in' and 'running on' meant with what the parties are now in

 1    understanding -- or what Solas has proposed is an

 2    understanding that 'accommodated in' and 'running on' don't

 3    mean the same thing.  So we would agree they don't mean the

 4    same thing, but that doesn't tell us what 'accommodated in'

 5    means in the context of the patent and in context of the

 6    intrinsic record.

 7               THE COURT:  It may not tell us -- the fact that

 8    those two terms aren't the same thing may not tell us what

 9    'accommodated in' means, but it doesn't tell us that

10    'accommodated in' doesn't have a definite meaning.  Do you

11    understand?

12               MS. SCHROEDER:  Yes, I understand, Your Honor.

13               THE COURT:  Okay.

14               THE COURT:  And that's the next step in the series

15    I'm trying to get to.

16               MS. SCHROEDER:  Okay.  And so with respect to that,

17    what Solas then points to is these dictionary definitions.

18    Now, these dictionary definitions are common language

19    dictionaries.  They are not technical dictionaries.  So I

20    don't think there's any dispute that these dictionaries are

21    not purporting to explain what 'accommodated in' means in the

22    context of a computer processing patent.  Here we see that

23    Solas has picked two particular definitions from these two

24    lists of potential definitions "to provide room for, to

25    provide a place to stay or sleep for someone", and "to hold

1    comfortably without crowding".  Again, those extrinsic

2    dictionary definitions don't clarify the meaning of

3    'accommodated in' in the context of the '767 Patent.

4        And so then just to close out -- to cover Solas' proposed

5    alternative construction, I want to note two points.  The

6    first point is that the alternative construction, when read

7    into claim 11, renders claim 11 unreadable.  And then,

8    secondly, and this is the more important point, is Mr. Conkle

9    mentioned earlier these questions that Doctor Baker had raised

10   in his declaration regarding potential meanings of the term

11   'accommodated in'.

12       And I just want to clarify, and I'll put this up on the

13   elmo for a moment, these are not statements by Doctor Baker as

14   to potential meanings of the word 'accommodated in'.  What

15   they are are questions.  He's saying a POSITA would be unsure

16   if the term means that it's accommodated in some or all --

17   that some or all of the processing logic is accommodated in

18   RAM or non-volatile memory or in DRAM, and whether the

19   location of that memory has to be on the first integrated

20   circuit or some other integrated circuit and it may be

21   accessed by.  And Solas has really offered nothing other than

22   attorney argument for the fact that 'accommodated in' is so

23   clearly distinct from something -- a term like 'accessed by'.

24       So what Doctor Baker -- switching back to slide 13, what

25   Doctor baker was discussing are these questions that a person

1    of ordinary skill in the art would ask about what the meaning

2    of 'accommodated in' is, and he asks those questions and, you

3    know, Samsung has -- doesn't believe that we've received an

4    answer on these.  But in regards to what Solas has proposed,

5    this alternative construction doesn't answer the questions,

6    you know, must the logics, the two logics that are being

7    discussed, must they be accommodated in one or more memories;

8    separately, can 'accommodated in' cover remote access of the

9    logic from the integrated circuit; and third, how does

10   accommodated in differ -- if they do differ, which the parties

11   agree, how does 'accommodated in' differ from 'running on'.

12        And we've -- you know, the intrinsic record provides no

13   answers to these questions either, and so we're simply left to

14   guess what 'accommodated in' means, and, therefore, our

15   position is that the term is indefinite.

16             THE COURT:  Anything else?

17             MS. SCHROEDER:  And I'll just add, you know,

18   directly to Your Honor's earlier question about the use of the

19   term 'stored in' or 'contained in' as an alternative or an

20   interpretation of 'accommodated in', I think using that term

21   we still have the same problem.  That term doesn't better

22   resolve the questions posed by Doctor Baker and posed by

23   Samsung here as to the location and scope of the term

24   'accommodated in'.

25             THE COURT:  Okay.  Thank you, Ms. Schroeder.

1          MS. SCHROEDER:  Thank you, Your Honor.

2          THE COURT:  Mr. Conkle, do you have some rebuttal?

3          MR. CONKLE:  Yes, Your Honor.

4          THE COURT:  All right.  Let's make it targeted and

5    brief, please.

6       Go ahead.

7          MR. CONKLE:  Yes, Your Honor.

8       Ms. Henry was just warning me at lunch that you like to

9    get attorney admissions, so as much as it pains me to say, we

10   wouldn't have a problem with 'store' or 'contain'.  We hadn't

11   proposed that, but I don't think we would object to that.

12         THE COURT:  Well, as I made clear, the Court doesn't

13   feel constrained by what the parties propose.

14         MR. CONKLE:  Understood.  And the -- understood.

15      In terms of what Doctor Baker said --

16      If I could have the elmo.

17      The term "'accommodated in' could mean that", et cetera,

18   "'accommodated in' could mean that", "'accommodated in' could

19   mean that".  That's what Doctor Baker had to say.

20      There is a suggestion that our proposed construction is

21   nonsensical.  It's, of course, a statement of the plain and

22   ordinary meaning; it's not intended to substitute in for the

23   claim language.  If we want a wordsmith, we can talk about

24   wordsmithing, but I'm sure Your Honor can fix that.

25         And there was some question as to whether the proposed

1   construction resolves the plain and ordinary meaning.  I just

2   want to focus on it does not clarify whether 'accommodated in'

3   covers accessed by what Ms. Schroeder called 'remote access'.

4   No, I doesn't -- I mean, does it cover?  No, that's not what

5   it means.  It means 'in', not 'remote'.  I'd be happy to

6   clarify our position there, but I think it's rather clear what

7   our view on those is.

8           THE COURT:  All right.  Thank you, counsel.

9           MR. CONKLE:  Thank you.

10          THE COURT:  All right.  Let's go to the next

11  disputed claim language, which is 'the gesture-processing

12  logic' from claim 13.

13      And let he hear from Plaintiff first.

14      You're proposing just 'the logic', and Defendants tell me

15  again that this is indefinite, so --

16          MR. CONKLE:  That's right.

17          THE COURT:  -- where are we?

18          MR. CONKLE:  Ms. Henry, could we go to slide 9,

19  actually?

20      Where we are is that -- is the difference between claims

21  1 and 13 I think resolves this issue.  As you said, yes, we

22  think 'gesture-processing logic' in 13 is -- refers to 'the

23  logic'.

24      As we were just discussing, claim 1 has two logics.  It

25  has a position-processing logic that calculates the positions

1    of interactions, and then a gesture-processing logic that

2    recognizes gestures.  Frankly, the second of those is more

3    important in the context of this invention, and so claim 13

4    quite properly only claims one of those two logics.  The

5    position-processing logic is simply outside the scope of claim

6    13.

7         A little bit of the language, as you can see sort of the

8    in the middle of the this comparison, survives just in that --

9    in claim 1 the position-processing logic outputs time series

10   of data to the gesture-processing logic I think is the

11   implication.  I'm not sure that that's a claim limitation per

12   se, but because that language is gone with the removal of

13   'position-processing logic', that's claimed in claim 13 as the

14   sole logic receives a time series of data.  But, frankly,

15   other than that difference, all the rest of the claim is

16   identical, or nearly so.

17        There's only -- but because there's only one logic, for

18   whatever reason, the patentee just decided to claim it as 'the

19   logic' rather than 'gesture-processing logic'.  And then when

20   this limitation that the gesture-processing logic being coded

21   with gesture recognition code, et cetera, it's just -- it --

22   the parallelism fails.

23        So is there on the surface an antecedent basis problem?

24   Sure.  Is that a grounds for invalidity?  No.  It's crystal

25   clear that 'the gesture-processing logic' refers back to the

1   only logic which is 'the logic'.

2       If you had any questions I'd be happy to answer, but,

3   frankly, I don't really have much else to say.

4           THE COURT:  Let me hear from the Defendants and then

5   I may have some questions for the Plaintiff at that time.

6           MR. CONKLE:  Thank you.

7           THE COURT:  Go ahead, Ms. Schroeder.

8           MS. SCHROEDER:  Thank you, Your Honor.

9       With respect to 'the gesture-processing logic' term, we

10  can start by -- and I think Mr. Conkle appeared to acknowledge

11  the fact that there is an obvious antecedent basis issue in

12  that 'the gesture-processing logic' does not have a clear

13  antecedent.  There is no statement prior to it in claim 13

14  that -- of a 'gesture-processing logic'.

15      And earlier and during his presentation, Mr. Conkle also

16  noted that there are two logics that are disclosed in the

17  patent and specifically also described in claim 1, 'the

18  gesture-processing logic' and 'the position-processing logic'.

19      So are as we see in claim -- in slide 15, what boils down

20  to the conflict between the parties is that -- is whether

21  Solas can fix --

22      I'm sorry, Your Honor.  Let me fix that for a second.

23          THE COURT:  It's fine.  Honestly, I'm going to pay a

24  lot more attention to what you tell me than what your slide

25  shows me.

1          MS. SCHROEDER:  Thank you, Your Honor.

2      The conflict between the parties, the dispute here, is

3  whether Solas can fix what is an obvious antecedent basis

4  issue by using the term 'the logic', so referring back to  the

5  term -- the more generic term 'logic' that is used in the

6  beginning of claim 13.

7      Moving to slide 16 -- sorry, to slide 17 -- as we notice,

8  Solas conceded the specification discloses these two logics.

9  Claim 1 here confirms that.  And when we go to slide 18, what

10  we're seeing is that Solas' proposed fix here actually

11  eliminates claim language, so it's eliminating the term

12  'gesture-processing logic' from what is at this point the

13  third or fourth limitation of the claim.  This would have the

14  effect of impermissibly broadening the claim language because

15  we acknowledge and the parties agree that logic refers in the

16  patent to two different kinds of logic.

17      And so with that, our position is still that this is an

18  indefinite term because the proposed fix does not clarify or

19  does not permit a person of skill in the art to ascertain the

20  clear meaning of that term in the scope of claim 13.

21          THE COURT:  Tell me this, counsel.  Why would it be

22  improper or an error to basically conclude that the

23  gesture-processing logic is part of but not all of the logic?

24  You've already told me the parties agree there are two types

25  of logic.  Why is it -- why would it be improper to have the

1    broader term in the earlier part of the claim and then the

2    more narrow term in the latter part of the claim and construe

3    that narrower term, here 'gesture-processing logic', to be a

4    part of but not exclusive and all of the logic that's

5    mentioned earlier?  Wouldn't that comport with what you just

6    told me--that the parties agree there are two types of logic

7    here?

8            MS. SCHROEDER:  Yes, but I think the key

9    distinction, and Mr. Conkle kind of pointed to this when he

10   was talking about claim 13, is that so this

11   'gesture-processing logic' term shows up in the 'analyze the

12   time series of data' element.  There is an earlier element,

13   which is 'receives a time series of data, indicative of the

14   interaction positions on a sensor'.  That element, 'receive a

15   time series of data', is actually not expressly linked.

16   There's no written -- there's no express written description

17   support linking 'the receipt of time series of data' to 'the

18   gesture-processing logic'.  And we can see that, if we look

19   back at claim 1, which showed us that "the processor operable

20   to execute position-possessing logic", so the

21   position-processing logic calculates and outputs a time series

22   of data, and then the gesture-processing logic analyzes the

23   time series of data and outputs the gesture, the multi-touch

24   gesture.

25           What is not stated in claim 1 anywhere, and anywhere else

 1    expressly in the patent, is what's doing the receiving.  So

 2    there's nothing to expressly state that gesture-processing

 3    logic is doing the receiving, and that's I think the problem

 4    with kind of disregarding the antecedent basis issue here is

 5    what a person of skill in the art is still left to question,

 6    Well, what component is responsible for receiving and, to that

 7    extent, what is going to do the infringing.

 8            THE COURT:  So you're telling me, as you read the

 9    patent-in-suit, there aren't references that pretty clearly

10    link 'gesture-processing logic or unit' to 'analyzing the time

11    series of data'?

12            MS. SCHROEDER:  Oh, to 'analyzing the time series of

13    data', yes.

14            THE COURT:  Okay.

15            MS. SCHROEDER:  So that's clear in claim 1--the

16    gesture-processing logic analyzes the time series of data and

17    outputs of gesture.  The thing that's no not clearly linked is

18    the prior term, which is 'receipt of the time series of data'.

19            THE COURT:  Okay.  Let me ask you, if you will, by

20    way of summing up, just to give me the most concise sentence

21    or two you can as to why the 'gesture-processing logic' is

22    indefinite under a clear and convincing evidence standard.

23    How do we not know what it means?

24            MS. SCHROEDER:  Okay.  So claim 13 starts off by

25    discussing 'logic', the more generic term.  The parties seem

1    to agree that 'logic' refers clearly in the patent to two

2    separate kinds of logic.  We get down to the analyze element

3    and that provides the 'gesture-processing logic'.  We don't

4    know what part of 'logic', which can include

5    'position-processing logic' or 'gesture-processing logic' is

6    doing the 'receives a time series of data' function.  So

7    proposing a fix where now we say 'the gesture-processing

8    logic' means 'the logic', that doesn't clarify the issue.

9    We're still indefinite and we still don't know what component

10   -- for instance, for Samsung, we don't know what component is

11   going to be responsible or going to be identified as the

12   infringing component when we get down the line.  This doesn't

13   help a jury or person of ordinary skill in the art understand

14   what it means.

15              THE COURT:  Well, let me say this.  You may have a

16   better argument that a proper construction of 'the

17   gesture-processing logic' doesn't simply mean 'the logic',

18   than you do that 'the gesture-processing logic' is indefinite.

19   You're telling me why the Plaintiff's proposed construction is

20   wrong.  That -- you may have some good arguments for that, but

21   that doesn't meet your burden to prove to me that the claim

22   language itself, when read in a proper context, is indefinite

23   and not able to be clearly understood.  So they can be wrong

24   on what they're proposing.  That doesn't get you to where you

25   say you should end up.  If -- you know, I think those are two

1  different things.

2       So what I'm trying to get you to tell me is your

3  penultimate sentence as to why the language at issue, 'the

4  gesture-processing logic', is indefinite, not why Plaintiff's

5  proposal's wrong.

6            MS. SCHROEDER:  Okay.  Thank you, Your Honor.

7       So on that point, I would just go back to the legal

8  principles at work here.  When there is an antecedent -- every

9  term needs to have an antecedent basis.  When there is no

10  clear antecedent basis for a term, meaning the term says 'the

11  gesture-processing logic' and there is no 'a

12  gesture-processing logic' to point back to, it's presumptively

13  -- it's potentially indefinite unless you can -- a person of

14  ordinary skill in the art can ascertain the meaning of 'the

15  gesture-processing logic' from the rest of the claim.

16       Here Samsung's position is you can't ascertain the

17  meaning of 'the gesture-processing logic' because it doesn't

18  -- it now conflicts with the earlier term 'the logic' as to

19  which parts are actually performing those functions, all of

20  the stated functions in claim 13.

21            THE COURT:  All right.  Anything further?

22            MS. SCHROEDER:  No.  Thank you, Your Honor.

23            THE COURT:  Anything further on this from the

24  Plaintiff?

25            MR. CONKLE:  If you don't have any questions, no.

1          THE COURT:  All right.  Well, counsel, those are the

2    two terms that were left in dispute after the parties resolved

3    the first term that we talked about at the beginning of

4    today's hearing.

5        These matters are under submission.  The Court will

6    endeavor to get you written guidance by way of a claim

7    construction opinion as soon as practical.  I can't tell you

8    exactly when that will be, especially given the time of year

9    we are in, but I will get it to you as soon, as I say, as is

10   practical given the other demands on the Court's schedule.

11        Are there any other issues that counsel is aware of that

12   relate to claim construction that the Court for some reason

13   hasn't taken up or addressed?

14          MR. CONKLE:  No, Your Honor.

15          MR. GORHAM:  No, Your Honor.

16          THE COURT:  All right.  That will complete claim

17   construction in this matter.  Thank you for your presence and

18   your argument.  You're excused.

19        And the Court stands in recess.

20                    (End of hearing.)

21

22

23

24

25

1          I HEREBY CERTIFY THAT THE FOREGOING IS A

2     CORRECT TRANSCRIPT FROM THE RECORD OF

3     PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

4     I FURTHER CERTIFY THAT THE TRANSCRIPT FEES

5     FORMAT COMPLY WITH THOSE PRESCRIBED BY THE

6     COURT AND THE JUDICIAL CONFERENCE OF THE

7     UNITED STATES.

8

9     S/Shawn McRoberts                12/17/2021

10    _____DATE_____
      SHAWN McROBERTS, RMR, CRR
11    FEDERAL OFFICIAL COURT REPORTER

12

13

14

15

16

17

18

19

20

21

22

23

24

25