# EXHIBIT 5

# UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/014,831 | 08/23/2021 | 7499042 | 034960.0038-US01 | 7318 |

7590         02/02/2022

JAMESMILKEY
12424 WILSHIRE BLVD,
12TH FLOOR
LOS ANGELES, CA 90025

| EXAMINER |
|---|
| GE, YUZHEN |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 02/02/2022 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)



**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

COVINGTON & BURLING, LLP
ATTN: PATENT DOCKETING
ONE CITYCENTER
850 TENTH STREET, NW
WASHINGTON, DC 20001-4956

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. _90/014,831_ .

PATENT UNDER REEXAMINATION _7499042_ .

ART UNIT _3992_ .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Office Action in Ex Parte Reexamination* | **Control No.**<br>90/014,831 | **Patent Under Reexamination**<br>7499042 | |
|---|---|---|---|
| | **Examiner**<br>YUZHEN GE | **Art Unit**<br>3992 | **AIA (FITF) Status**<br>No |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a. ☐ Responsive to the communication(s) filed on _____.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

b. ☐ This action is made FINAL.

c. ☑ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire 2 month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination
certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days
will be considered timely.

Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

    1. ☐ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.

    2. ☐ Information Disclosure Statement, PTO/SB/08.    4. ☐ _____.

Part II    SUMMARY OF ACTION

    1a. ☑ Claims <u>1-6 and 10-11</u> are subject to reexamination.

    1b. ☐ Claims _____ are not subject to reexamination.

    2. ☐ Claims _____ have been canceled in the present reexamination proceeding.

    3. ☐ Claims _____ are patentable and/or confirmed.

    4. ☑ Claims <u>1-6 and 10-11</u> are rejected.

    5. ☐ Claims _____ are objected to.

    6. ☐ The drawings, filed on _____ are acceptable.

    7. ☐ The proposed drawing correction, filed on _____ has been (7a) ☐ approved (7b) ☐ disapproved.

    8. ☑ Acknowledgment is made of the priority claim under 35 U.S.C. 119(a)-(d) or (f).

        a) ☑ All  b) ☐ Some*  c) ☐None    of the certified copies have

        1 ☐ been received.

        2 ☐ not been received.

        3 ☑ been filed in Application No. <u>11/035,269</u>.

        4 ☐ been filed in reexamination Control No. _____.

        5 ☐ been received by the International Bureau in PCT application No. _____.

        * See the attached detailed Office action for a list of the certified copies not received.

    9. ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal
        matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D.
        11, 453 O.G. 213.

    10. ☐ Other: _____

cc: Requester (if third party requester)

# EX PARTE REEXAMINATION OF U.S. PATENT 7,499,042

## I.  ACKNOWLEDGEMENT

On August 23, 2021, Third Party Requester ("**Requester**") filed a request ("**Request**")

for *ex parte* reexamination of claims 1-6 and 10-11 ("**Requested Claims**") of US Patent

5     7,499,042  ("**the `042 Patent**") which was issued to Shirasaki et al with title "Device, Data

Driving Circuit,  And Display Panel Driving Method."  The `042 Patent was filed on Jan. 12,

2005 with application  number 11/035,269  ("**the 269 Application**") and issued on Mar. 3, 2009

with claims  1-11.

On Sept. 8, 2021, the Office mailed an order ("2021 Order") granting reexamination  of

10    claims  1-6 and 10-11 of the `042 Patent.

A Patent Owner's statement has not been received after two months  that the

reexamination  is ordered.


## II. PRIORITY CLAIMS

15    *This section is the same as that in the 2021 Order.*

Based upon a review of the `042 Patent, the Examiner finds that the `042 Patent or the

269 Application  claims does not claim any domestic priority  but claims foreign priority  to JP

2004-009146,  filed on Jan. 16, 2004.  To the extent that the claims of the `042 Patent are

supported by JP 2004-009146,  the priority  date is Jan. 16, 2004.  A certified  copy of foreign

20    priority  document is in the file of the 269 Application.  However an English translation  of the

foreign priority  document is not in the file of the 269 Application.

Because the effective filing date of the `042 Patent is not on or after March 16, 2013, the AIA First Inventor to File ("AIA-FITF") provisions does not apply and the earlier 'First to Invent' provisions apply.

5
## III. PRIOR OR CONCURRENT PROCEEDINGS

*This section is the same as that in the 2021 Order.*

Based upon Examiner's review of the `042 Patent itself, the Request, and its prosecution history, the Examiner finds that there are no prior or concurrent *ex parte* or supplemental reexaminations for the `042 Patent. There were no prior *inter parte* reviews either. However

10    there are concurrent litigations which are noted in the file.

## IV. REFERENCES

i.       The article "*Full Color Polymer OLED Display Driven by a-Si:H TFT Utilizing a New Current-Programmed Method*" ("Shirasaki'), published by the

15       Society for Information Display in the Proceedings of the 10th International Display Workshops ("IDW"), and provided to attendees of the conference, held December 3-5, 2003. Shirasaki qualifies as prior art to the `042 Patent under 35 U.S.C. § 102(b).

ii.      PCT Application No. WO 2004/001714 ("Sato"), published on Dec. 31, 2003. Sato qualifies as prior art to the `042 Patent under 35 U.S.C. § 102(b).

20

iii.     U.S. Patent Pub No. 2003/0122745 ("Miyazawa"), published on July 3, 2003, Miyazawa qualifies as prior art to the `042 Patent under 35 U.S.C. § 102(b).

# V.  CLAIM INTERPRETATION

## A.      Lexicographic Definitions

After careful review of the original specification and unless expressly noted otherwise by the Examiner, the Examiner cannot locate any lexicographic definitions in the original

5   specification with the required clarity, deliberateness, and precision.  Because the Examiner cannot locate any lexicographic definitions in the original specification with the required clarity, deliberateness, and precision the Examiner concludes the Patent Owner is not their own lexicographer.  See MPEP § 2111.01 IV.

10  ## B.      Abbreviations

BRI – Broadest Reasonable Interpretation.

POSITA – A person of ordinary skill in the art.

## C.      'Sources' for the 'Broadest Reasonable Interpretation'

15  For terms not lexicographically defined by Patent Owner, the Examiner hereby adopts the following interpretations under the broadest reasonable interpretation standard.  In other words, the Examiner has provided the following interpretations simply as express *notice* of how she is interpreting particular terms under the broadest reasonable interpretation standard.  Additionally, these interpretations are only a guide to claim terminology since claim terms must be interpreted

20  in context of the surrounding claim language.[1]   In accordance with *In re Morris*, 127 F.3d 1048, 1056, 44 USPQ2d 1023, 1029 (Fed. Cir. 1997), the Examiner points to these other "sources" to

---

[1] While most interpretations are cited because these terms are found in the claims, the Examiner may have provided additional interpretations to help interpret words, phrases, or concepts found in the interpretations themselves, the `042 Patent, or in the prior art.

support her interpretation of the claims. Finally, the following list is not intended to be

exhaustive in any way:

1.       Circuit: "circuit (1) (A) The physical medium on which signals are carried across

5    the AUI. The data and control circuits consist of an A circuit and a B circuit forming a balanced

transmission system so that the signal carried on the B circuit is the inverse of the signal carried

on the A circuit. (B) (data transmission) A network providing one or more closed paths. (C) An

arrangement of interconnected components that has at least one input and one output terminal,

and whose purpose is to produce at the output terminals a signal that is a function of the signal at

the input terminals. Synonyms: physical circuit; network. See also: expansion board; channel;

10   telecommunication circuit. (D) An arrangement of interconnected electronic components that can

perform specific functions upon application of proper voltages and signals. See also: logic

circuit; integrated circuit." – The Authoritative Dictionary of IEEE Standards Terms, 7th Ed.,

IEEE, Inc., New York, NY.

2.       Display: "display device (1) In computer graphics, an output device on which

15   display images can be represented. For example, cathode ray tube display device, plotter, hard

copy unit. See also: graphical display device. (2) An output device that gives a visual

representation of data. (3) The hardware used to provide the display to users. An example is a

video display unit." – The Authoritative Dictionary of IEEE Standards Terms, 7th Ed., IEEE,

Inc., New York, NY.

20   3.       Configuration: "(C) The physical and logical elements of an information

processing system, the manner in which they are organized and connected, or both. Note: May

refer to a hardware configuration or software configuration." The Authoritative Dictionary of

IEEE Standards Terms, 7th Ed., IEEE, Inc., New York, NY, 12/2000.

Control Number: 90/014,831                                                                          Page 6
Art Unit: 3992

**D.      35 U.S.C. § 112 6th Paragraph**

The following is a quotation of pre-AIA § 112 ¶ 6:

5
> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

A second exception is when a claimed phrase is interpreted in accordance with 35 U.S.C.

10      § 112 6th paragraph ("**§ 112 ¶ 6**"). See MPEP § 2181 *et seq.* To invoke § 112 ¶ 6, a claimed

phrase must meet the three prong analysis ("**3 Prong Analysis**") as set forth in MPEP § 2181 (I).

The following phrases will be first identified and then analyzed using the MPEP's 3 Prong

Analysis to determine if the claimed phrases invoke § 112 ¶ 6. If a phrase invokes § 112 ¶ 6, the

corresponding structure will also be determined. The Examiner has reviewed the reexamined

15      claims and determines that the following functional phrases invoke § 112 ¶ 6.


**1.  Functional Phrase #1**

a plurality of pixel circuits which are connected to said plurality of
20      selection scan lines and said plurality of current lines, and supply a driving current
having a current value corresponding to the current value of the designating
current which flows through said plurality of current lines;
wherein in the selection period, each of said plurality of pixel circuits
loads the designating current which flows through said plurality of current lines,
25      and stores a level of a voltage converted in accordance with the current value of
the designating current, and after the selection period, each of said plurality of
pixel circuits shuts off the designating current which flows through said plurality
of current lines, and supplies a driving current corresponding to the level of the
voltage converted in accordance with the designating current.

30
--"**Functional Phrase #1**" or "**FP #1**" – From claim 1 and claim 10.


**i.      3 Prong Analysis: Invocation Prong (A)**

35      In accordance with Invocation Prong (A), the MPEP states:

(A) the claim limitation  uses the term "means" or "step" or a term used as a
substitute for "means" that is a generic placeholder (also called a nonce term or a
non-structural term having no specific structural meaning)  for performing the
claimed function ....

MPEP § 2181 I. — Invocation  Prong (A).

As an initial  matter, the Examiner  finds that Functional  Phrase #1 does not use the term
"means."  Therefore the issue arising under Invocation  Prong (A) then becomes whether or not
FP#1, including  the claimed "pixel circuit [*and* perform the claimed functions]," is a generic
placeholder  for "means."

In assessing whether or not FP#1 invokes  § 112 ¶ 6, the Examiner  must not only consider
the introductory  phrase "pixel circuit,"  but the entire FP#1.  "In assessing whether the claim
limitation  is in means-plus-function  format, we do not merely consider the introductory  phrase
(e.g., 'mechanical control assembly') in isolation,  but look to the entire passage including
functions  performed by the introductory  phrase. [Emphasis added.]" *MTD Prods. Inc. v. Iancu*,
933 F.3d 1336, 1342 (Fed. Cir. 2019).

Second, the Examiner  has reviewed the original  specification and drawings as set forth in
the 269 Application  or the`042 Patent, general and subject matter specific dictionaries,  and the
prior art now of record to determine if they provide  a description sufficient  to inform one of
ordinary  skill in this particular art that FP#1 denotes a particular  structure.

Third, the Examiner  finds that a "pixel circuit"  is structure.  However the claimed "pixel
circuit"  as set forth in FP#1 has a particular  configuration  to perform the claimed functions.  In
light of the claimed "pixel circuit,"  the Examiner  concludes that the claimed "pixel circuit"  is not
a generic pixel circuit or a known in the art pixel circuit but a particular pixel circuit  requiring

Control Number: 90/014,831                                                                Page 8
Art Unit: 3992

special programming since the specific claimed functions as set forth in FP#1 cannot be

performed by a generic pixel circuit known in the art.

    In light of the above, the Examiner concludes that the phrase "pixel circuit" performing

the claimed functions is a generic placeholder. Because "pixel circuit" is merely a generic

placeholder, the Examiner concludes that Functional Phrase #1 meets invocation Prong (A).

    **ii.**        **<u>3 Prong Analysis</u>: Invocation Prong (B)**

    Based upon a review of the Functional Phrase #1, the Examiner finds that for Functional

Phrase #1, the claimed function is

> supply a driving current having a current value corresponding to the
> current value of the designating current which flows through said plurality of
> current lines;
>     wherein in the selection period, each of said plurality of pixel circuits
> loads the designating current which flows through said plurality of current lines,
> and stores a level of a voltage converted in accordance with the current value of
> the designating current, and after the selection period, each of said plurality of
> pixel circuits shuts off the designating current which flows through said plurality
> of current lines, and supplies a driving current corresponding to the level of the
> voltage converted in accordance with the designating current.

    --**Function of FP#1.**

    Additionally, the Examiner finds that because nothing in the written description of the

`042 Patent contradicts the plain language as set forth in the Function of FP#1, Function of FP#1

will have their ordinary and accustomed meaning. Because Functional Phrase #1 includes the

Function of FP#1, the Examiner concludes that, Functional Phrase #1 meets invocation prong

(B).

    **iii.**        **<u>3 Prong Analysis</u>: Invocation Prong (C)**

    Based upon a review of Functional Phrase #1, the Examiner finds that Functional Phrase

#1 does not contain sufficient structure for performing the entire Function of FP#1. In fact, the

Control Number: 90/014,831                                              Page 9
Art Unit: 3992

Examiner finds that Functional Phrase #1 recites very little structure (if any) for performing the

Function of FP#1.

Because Functional Phrase #1 does not contain sufficient structure for performing the

entire claimed function, the Examiner concludes that Functional Phrase #1 meets invocation

5    Prong (C).

Because Functional Phrase #1 meets the three prong analysis as set forth in MPEP § 2181

I, the Examiner concludes that Functional Phrase #1 invokes § 112 ¶ 6.



**FIG.1**

-Fig. 1 of the 042 Patent, showing circuit corresponding to FP#1, i.e., pixel circuits, $P_{i,j}$.

10

Control Number: 90/014,831                                                                Page 10
Art Unit: 3992

### iv.      Corresponding Structure or Materials

"The next step in construing a means-plus-function claim limitation is to look to the

specification and identify the corresponding structure for that function." *In re Aoyama*, 656 F3d

1293, 99 USPQ2d 1936 (Fed. Cir. 2011) quoting *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d

5   1327, 1333, 1334, [69 USPQ2d 1481, 1486] (Fed. Cir. 2004). "Under this second step, structure

disclosed in the specification is `corresponding' structure only if the specification or prosecution

history clearly links or associates that structure to the function recited in the claim." *In re*

*Aoyama*, , 99 USPQ2d at 1939 quoting *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*,

344 F.3d 1205, 1210, [68 USPQ2d 1263, 1267] (Fed. Cir. 2003).

10         Based upon a review of the `042 Patent itself, the Examiner concludes that the

corresponding structure for FP#1 is disclosed as the pixel circuit $P_{i,j}$ shown in Figs. 1 and 3

described in 5:25-8:19 of the `042 Patent and the algorithm performed by the pixel circuit is

> supply a driving current having a current value corresponding to the
> current value of the designating current which flows through said plurality of
15 current lines;
> in the selection period, each of said plurality of pixel circuits loads the
> designating current which flows through said plurality of current lines, and stores
> a level of a voltage converted in accordance with the current value of the
> designating current, and after the selection period, each of said plurality of pixel
20 circuits shuts off the designating current which flows through said plurality of
> current lines, and supplies a driving current corresponding to the level of the
> voltage converted in accordance with the designating current.

25    **2. Functional Phrase #2**

> a data driving circuit which applies a reset voltage to said plurality of current lines
> in a first part of the selection period, and supplies a designating current having a
> current value corresponding to an image signal to said plurality of current lines in
30 a second part of the selection period after applying the reset voltage in the
> selection period.

--"**Functional Phrase #2**" or "**FP #2**" – From claim 1 and claim 10.

### i-iii.    3 Prong Analysis: Invocation Prong (A)-(C)

Similar analysis performed above for FP#1 is also performed for FP#2 and it is Examiner's conclusion that FP#2 invokes § 112 ¶ 6.

### iv.    Corresponding Structure or Materials

Based upon a review of the `042 Patent itself, the Examiner concludes that the corresponding structure for FP#2 is disclosed as the data driving circuit 7 in Fig. 1 including the input of $V_R$ and φ and the algorithm performed by the data driving circuit 7 is "applies a reset voltage to said plurality of current lines in a first part of the selection period, and supplies a designating current having a current value corresponding to an image signal to said plurality of current lines in a second part of the selection period after applying the reset voltage in the selection period."

### 3. Functional Phrase #3

a current source driver which supplies the designating current having the current value corresponding to the image signal after the reset voltage is applied by the switch within the selection period.

--"**Functional Phrase #3**" or "**FP #3**" – From claim 2.

### i-iii.    3 Prong Analysis: Invocation Prong (A)-(C)

Similar analysis performed above for FP#1 is also performed for FP#3 and it is Examiner's conclusion that FP#3 invokes § 112 ¶ 6.

### iv.    Corresponding Structure or Materials

Based upon a review of the `042 Patent itself, the Examiner concludes that the corresponding structure for FP#3 is disclosed as the current source driver 3 in Fig. 1. The structure of the current source driver is known in the art "to supply the designating current having the current value corresponding to the image signal after the reset voltage is applied by

5   the switch within the selection period" (4:39-43, 11:41-65, *Id*).

### 4. Functional Phrase #4

10   a selection scan driver which sequentially selects said plurality of selection scan lines in each selection period

--"**Functional Phrase #4**" or "**FP #4**" – From claim 1.

15                    i-iii.      **3 Prong Analysis**: Invocation Prong (A)-(C)

Similar analysis performed above for FP#1 is also performed for FP#4 and it is Examiner's conclusion that FP#4 invokes § 112 ¶ 6.

20                    iv.      **Corresponding Structure or Materials**

Based upon a review of the `042 Patent itself, the Examiner concludes that the corresponding structure for FP#4 is illustrated as the selection scan driver 5 in Fig. 1-Fig. 12 and described in 9:3-19. That is, the selection scan driver is a "so-called shift register" and "sequentially selects the selection scan lines $X_1$ to $X_m$ by sequentially outputting selection signals

25   in order from the selection scan line $X_1$ to the selection scan line $X_m$ (the selection scan line $X_m$ is followed by the selection scan line $X_1$), thereby sequentially selecting the first and second transistors 21 and 22 in these rows connected to the selection scan lines $X_1$ to $X_m$." (9:3-19, *Id*).

Control Number: 90/014,831                                                        Page 13
Art Unit: 3992

### v.        How To Prevent FP#1-FP#4 From Invoking § 112 ¶ 6

If Patent Owner does not intend to have the claim limitation invoke § 112 ¶ 6, Patent

Owner may amend claims 1, 2 and 10 so that they will clearly not invoke § 112 ¶ 6.

Moreover, if Patent Owner believes FP#1-FP#4 have a structural meaning known to a

5   person of ordinary skill in this particular art, Patent Owner should in their next appropriately

filed response, expressly state on the record that FP#1-FP#4 have a structural meaning known to

a person of ordinary skill in this particular art ***and*** provide appropriate evidence in support

thereof (*e.g.* a prior art U.S. patent).

Additionally, in order to show that FP#1-FP#4 do not meet 3 Prong Analysis: Invocation

10  Prong (C), Patent Owner must also state on the record and provide evidence in support thereof

that the claimed structure (of FP#1-FP#4 whatever it is) can perform the *entire* Function of

FP#1-FP#3.

Patent Owner is reminded that should Patent Owner amend a claimed phrase so that a

claimed phrase does not invoke § 112 ¶ 6 or successfully argue that a claimed phrase does not

15  invoke § 112 ¶ 6, elements from the specification (including any algorithms) will ***not*** be read

into the claims. "This court [the Federal Circuit] has repeatedly and clearly held that it will not

read unstated limitations into claim language." *Northern Telecom Ltd. v. Samsung Elecs. Co.*,

215 F.3d 1281, 1290, 55 USPQ2d 1065, 1072 (Fed. Cir. 2000).

20                                  **VI. STATUS OF CLAIMS**

Based on the Request and the 2021 Order:

Claims 1-6 and 10-11 are being reexamined ("**Reexamined Claims**").

Regarding the Reexamined Claims and as a result of this Office action:

Control Number: 90/014,831                                                    Page 14
Art Unit: 3992

Claims 1-6 and 10-11 are rejected.


## VII. CLAIM REJECTIONS - 35 U.S.C. § 103

The following is a quotation of pre-AIA 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.



**FIG.1**

-Fig. 1 of Sato.

**A.      Claims 1-6 and 10-11 are rejected under pre-AIA 35 U.S.C. § 103(a) as being**

**unpatentable over Sato in view of Shirasaki.**

       **Summary of the rejection**: The primary reference of Sato discloses the corresponding

5    hardware or circuits required by the claims or the functional phrases of the claims (see Section V

Claim Interpretation above) except for the algorithm performed by the data driving circuit in the

first part of the selection period and the algorithm performed by the pixel circuits.  The

secondary reference of Shirasaki discloses the above algorithms not expressly disclosed by Sato.

10      Regarding claim 1, Sato teaches a display device comprising:

      a plurality of selection scan lines (X1-Xm, Fig. 1, pp. 7 and 13);

      a plurality of current lines (Y1-Yn, Fig. 1, p. 12);

      a selection scan driver which sequentially selects said plurality of selection scan lines in

each selection period (5 in Fig. 1. Last paragraph of p. 24, "*The selection scanning driver 5 is*

15   *formed of a so-called shifter register*.", see also pp. 37 and 39 and the description associated with

the selection scanning driver 5 in Fig. 1);

      a data driving circuit (Data Driver 3 and the circuit 7) which applies a reset voltage to

said plurality of current lines [in a first part of the selection period] ($V_R$ is the reset voltage, pp.

31-32, "*The switch circuits S1 to Sn are connected to a reset voltage input terminal 141, and the*

20   *reset voltage VR is applied to the switch circuits S1 to Sn via this terminal*." See also Fig. 8

which shows reset voltage is applied), and supplies a designating current having a current value

corresponding to an image signal to said plurality of current lines in a second part of the

selection period after applying the reset voltage in the selection period ("*the gradation*

designating current is the sink current flowing to the data driver 3 from the signal lines Y1 to Yn

via the current terminals $OT_1$ to $O_{Tn}$, and is equal to the current value of the current flowing

through the organic EL elements $E_{1,1}$ to Em,n in order to emit the light at the luminance

gradation in accordance with image data.", p. 27:5-12,  p. 39:9-15, p. 40:16-24,  see also Fig. 8);

5    and

a plurality of pixel circuits which are connected to said plurality of selection scan lines

and said plurality of current lines (4 in Fig. 1), and supply a driving current having a current

value corresponding to the current value of the designating current which flows through said

plurality of current lines (Fig. 8, p. 28:15-17, p. 45:4-9, "in any column of the first to n-th

10   columns, the current value of the driving current flowing through the organic EL elements $E_{i,1}$ to

$E_{i,n}$ in the emission period $T_{EM}$ reaches the current value of the gradation designating current

flowing through the signal lines $Y_1$ to $Y_n$.").

However, Sato does not expressly teach

a data driving circuit which applies a reset voltage to said plurality of current lines in a

15   first part of the selection period;

wherein in the selection period, each of said plurality of pixel circuits loads the

designating current which flows through said plurality of current lines, and stores a level of a

voltage converted in accordance with the current value of the designating current, and after the

selection period, each of said plurality of pixel circuits shuts off the designating current which

20   flows through said plurality of current lines, and supplies a driving current corresponding to the

level of the voltage converted in accordance with the designating current.

In the same field of display devices, data driving circuit and display panel driving

method, Shirasaki discloses a "full color polymer OLED display driven by a-Si:H TFT utilizing a

Control Number: 90/014,831                                                   Page 17
Art Unit: 3992

*new current-programmed method*" (Shirasaki, title).  Shirasaki discloses an OLED display for

TV monitor application and "*the panel for this application is required to be driven by an active-*

*matrix (AM) method and to have a larger panel-size*" (INTRODUCTION, *Id*).





Fig.1 3 Tr pixel driver circuit                     Fig.2 Timing diagram

5       -Figs. 1 and 2 of Shirasaki.

Shirasaki discloses:

Figures 1 and 2 show a pixel driver circuit and a timing diagram of the
signals, respectively.  At the beginning of the select periods, the data line is
grounded by $V_{reset}$ to discharge the data line and the OLED anode.  Then $I_{data}$ is set
10     to the pixel circuit with a sink mode.  To prevent the current flow through the
OLED, $V_{source}$ is also grounded and the OLED is biased reversely.  Therefore $I_{data}$
corresponds to $I_{T3}$ and $C_S$ stores the voltage to keep the $I_{T3}$.  During the hold
period, $V_{source}$ is set to be $V_{cc}$ and $I_{T3}$ keeps flowing according to the voltage on $C_S$.

15     -Pixel Circuit and A set of Timing, p.1 or p. 1665, *Id*.

Table 1 of Shirasaki discloses that its display includes a matrix comprising a matrix comprising 160 columns

and 128 rows of pixels and its "3-TFT and 3-busline pixel circuits" provided for each of the

160X128 pixels.  For example, for each pixel of the display panel, there is one pixel driver

circuit shown in Fig. 1.  Because Shirasaki discloses a 2.1inch OLED display (Fig. 5) with

plurality of pixels, Shirasaki discloses a plurality of pixel driver circuits. Further, the $V_{select}$ lines are the selection scan lines, and for each row of pixels, there will be one $V_{select}$ line (Fig. 1, *Id*). The $I_{data}$ lines are the current lines and for each column of pixels, there is one $I_{data}$ line (Fig. 1, *Id*) and the $I_{data}$ lines correspond to $I_{T3}$ and Cs stores the voltage to keep the $I_{T3}$. Shirasaki discloses

5   "a selection scan driver" for $V_{select}$ that provides the signals disclosed in Fig. 2.

Shirasaki discloses that a data driving circuit applies a reset voltage to said plurality of current lines in a first part of the selection period (Fig. 2, Vreset is applied in the first part of the selection period) and each of the "pixel circuits loads the designating current ($I_{data}$) which flows through said plurality of current line" (Figs. 1 and 2) and each pixel circuit stores a level of a

10   voltage converted in accordance with the current value of the designating current (Cs stores the voltage to keep the $I_{T3}$, p.1 or p. 1665).

Shirasaki discloses at the end of select period, $I_{data}$ no longer flows to the pixel (Fig. 2, Idata is 0 at the end of the select period). Shirasaki further explains that during the "hold" period (Fig. 2), "$V_{source}$ is set to be $V_{cc}$ and $I_{T3}$ keeps flowing according to the voltage on Cs" (Fig. 2, p.

15   1 or p. 1665, *Id*).

### Table 1 Specifications

| Items | Specification | |
|---|---|---|
| Size (Diagonal) | 5.2 (2.1) | cm (inch) |
| Dot format | 160(H)×RGB×128(V) | dot |
| Dot pitch | 0.252(H)×0.252(V) | mm |
| Frame frequency | 30 | Hz |
| Color arrangement | RGB-stripe | |
| Input signal | RGB each 6-bit | |
| CIE Color Coordinate | R (0.69, 0.31) | |
| | G (0.40, 0.58) | |
| | B (0.15, 0.15) | |
| Contrast Ratio | > 100 : 1 | |

-Table. 1 of Shirasaki.

As explained above and shown in Figs. 1-2 and above cited paragraph of Shirasaki,

Shirasaki discloses or suggests

5

a data driving circuit which applies a reset voltage to said plurality of current lines in a first part of the selection period;
wherein in the selection period, each of said plurality of pixel circuits loads the designating current which flows through said plurality of current lines, and stores a level of a voltage converted in accordance with the current value of the designating current, and after the selection period, each of said plurality of

10

pixel circuits shuts off the designating current which flows through said plurality of current lines, and supplies a driving current corresponding to the level of the voltage converted in accordance with the designating current.

15      **TSM-motivation**

Shirasaki discloses:

There are two ways to compensate the TFT threshold voltage variation, current-program [2] and voltage-program [3]. Both of them needed more than four TFTs; and four bus-lines for each pixel. in general, which is too complicated

20

in driving scheme and too busy in pixel aria to achieve the high reliability and large aperture ratio. Simpler circuit design and driving scheme are expected in a-Si TFT driving AM--OLED, In SID'03 three TFT voltage-program pixel circuit was presented using in 20 inch a-Si TFT AM-OLED [4]. This driving technology makes possible to drive large-sized AM-OLED utilizing a-Si TFT.

25

-Introduction, Shirasaki.

It is desirable to be able to drive a large-size AM-OLED and have a simpler driving

scheme to achieve high reliability and large aperture ratio. The disclosure of algorithms by

30   Shirasaki will improve the device of Sato by having a simpler driving scheme and have a high

reliability and large aperture ratio. Therefore it would have been obvious to one of ordinary

skills in the art, at the time of invention of the `042 Patent to use Shirasaki's method of data

driving in the data driving circuits and in the pixel circuits in the display device of Sato so that

large-size AM-OLED can be driven with high reliability and large aperture ratio.

### KSR-motivation

The combination of Sato with Shirasaki is supported by KSR rationale - (C) Use of known technique to improve similar devices (methods, or products) in the same way because: (1) as discussed above, Sato teaches a base device that is the same as the invention, except for improvements, such as, the features noted as missing above; (2) Sato and Shirasaki are similar devices; and (3) the references show that a POSITA at the time of the invention had the skill set and could apply Shirasaki's method of operating the data driving circuits and pixel circuits to improve the base device of Sato in the same way with predictable results or (B) Simple substitution of one known element for another to obtain predictable results because substituting the algorithm of the data driving circuits and the algorithm of the pixel circuits of Sato by that of Shirasaki will obtain predictable results.

Regarding claim 2, Sato and Shirasaki teach the apparatus according to claim 1, wherein said data driving circuit comprises: a switch which switches to a state in which the reset voltage is applied to said plurality of current lines in the first part of the selection period (Sato, $S_1, ..., S_n$ in Fig. 1); and a current source driver which supplies the designating current having the current value corresponding to the image signal after the reset voltage is applied by the switch within the selection period (Sato, Data Driver 3 in Fig. 1, "*the gradation designating current is the sink current flowing to the data driver 3 from the signal lines Y1 to Yn via the current terminals $OT_1$ to $O_{Tn}$, and is equal to the current value of the current flowing through the organic EL elements $E_{1,1}$ to Em,n in order to emit the light at the luminance gradation in accordance with image data.*", p. 27:5-12. See also p. 39:9-15, p. 40:16-24, see also Fig. 8, *Id*).

Control Number: 90/014,831                                                    Page 21
Art Unit: 3992

Regarding claim 3, Sato and Shirasaki teach the apparatus according to claim 1, further comprising a plurality of light-emitting elements which are arranged at intersections of said plurality of selection scan lines and said plurality of current lines (Sato, $E_{i,j}$ shown in Fig. 1), emit light at luminance corresponding to a current value of a driving current (Sato, p. 1:10-11, "*the*

5    *emission luminance is set in accordance with the current value of a gradation signal outputted from the data driver 3*." p.20:15-18, p. 27), and each have two electrodes one of which is connected to a corresponding one of said plurality of pixel circuits (Sato, Fig. 1; Shirasaki, Fig. 1).

10    Regarding claim 4, Sato and Shirasaki teach the apparatus according to claim 3, wherein the reset voltage applied by the data driving circuit is set equal to or lower than a voltage of the other electrode of the light-emitting element( Shirasaki discloses that the reset voltage applied by the data driving circuit (Vreset) is ground, which is equal to the voltage of the "other electrode of the light-emitting element," i.e., the cathode, which is also grounded. For example, Shirasaki

15    discloses that Vreset is ground: "*At the beginning of the select period, the data line is grounded by Vreset to discharge the data line and the OLEO anode*." p. 1 or p. 1665, Shirasaki.)

Regarding claim 5, Sato and Shirasaki teach the apparatus according to claim 1, further comprising: a plurality of voltage supply lines (Sato, $Z_1$-$Z_m$, Fig. 1; Shirasaki, $V_{source}$ lines); and

20    a voltage supply driver (Sato, power supply scanning driver 6, Fig. 1; Shirasaki, driver that supplies $V_{source}$) which sequentially selects said plurality of voltage supply lines in synchronism with the sequential selection of said plurality of selection scan lines by the selection scan driver (Sato, Fig. 8, $V_{ON}$ and $V_{DD}$ are synchronized; Shirasaki, Fig. 2, see the synchronization between $V_{select}$ and $V_{source}$).

Regarding claim 6, Sato and Shirasaki teach the apparatus according to claim 5, wherein each of said pixel circuits comprises:

a first transistor having a gate connected to the selection scan line (Sato, 21 is connected to $X_1$; Shirasaki, $T_2$ is connected to the bus line $V_{select}$, Fig. 1), and a drain and source one of which is connected to the current line (Sato, source terminal of 21 is connected to $Y_1$; Shirasaki, source terminal of $T_2$ is connected to the bus line $I_{data}$, Fig. 1);

a second transistor having a gate connected to the selection scan line, and a drain and source one of which is connected to the voltage supply line (Sato. 22 in Fig. 1; Shirasaki, $T_1$ in Fig. 1);

a driving transistor having a gate connected to the other of the drain and source of the second transistor, and a drain and source one of which is connected to the voltage supply line, and the other of which is connected to the other of the drain and source of the first transistor(Sato, 23 in Fig. 1; Shirasaki, $T_3$ in Fig. 1); and

a capacitor which stores a gate-to-one of source and drain voltage of the driving transistor by holding the voltage (Sato, 24 in Fig. 1; Shirasaki, Cs in Fig. 1, p. 1 or p. 1665).

Claim 10 is a broader version of claim 3. Therefore, Sato and Shirasaki teach claim 10 as explained above for claim 3.

Regarding claim 11, Sato discloses a display panel driving method comprising:

sequentially selecting a plurality of selection scan lines of a display panel (Fig. 8, 5 in Fig. 1. Last paragraph of p. 24, see also pp. 37, 39 and the description associated with the

selection scanning driver 5 in Fig. 1) comprising a plurality of pixel circuits connected to the

plurality of selection scan lines and a plurality of current lines (Fig. 1, pixel circuits $P_{i,j}$), and a

plurality of light-emitting elements which are arranged at intersections of the plurality of

selection scan lines and the plurality of current lines (Fig. 1, Ei,j shown in Fig. 1), wherein each

5    of the light-emitting elements emits light at luminance corresponding to a current value of a

current flowing the current line (p. 1:10-11, "*the emission luminance is set in accordance with*

*the current value of a gradation signal outputted from the data driver 3.*" p.20:15-18, p. 27);

applying a reset voltage to the plurality of current lines [in an initial part of a period] in

which each of the plurality of selection scan lines is selected ($V_R$ is the reset voltage, pp. 31-32,

10   "*The switch circuits S1 to Sn are connected to a reset voltage input terminal 141, and the reset*

*voltage VR is applied to the switch circuits S1 to Sn via this terminal.*" See Also Fig. 8);

after applying the reset voltage, supplying designating currents having current value

corresponding to an image signal to the plurality of current lines ("*the gradation designating*

*current is the sink current flowing to the data driver 3 from the signal lines Y1 to Yn via the*

15   *current terminals $OT_1$ to $O_{Tn}$, and is equal to the current value of the current flowing through the*

*organic EL elements $E_{1,1}$ to Em,n in order to emit the light at the luminance gradation in*

*accordance with image data.*", p. 27:5-12.  See also p. 39:9-15, p. 40:16-24, see also Fig. 8).

However Sato does not expressly discloses "applying a reset voltage to the plurality of

current lines in an initial part of a period in which each of the plurality of selection scan lines is

20   selected" and "storing, in the plurality of pixel circuits, the current value of the designating

currents flowing through the plurality of current lines; and after supplying the designating

currents, allowing the plurality of pixel circuits to supply, to the plurality of light-emitting

elements, driving currents having current value corresponding to the stored current value of the

designating currents."

In the same field of display devices, data driving circuit and display panel driving

method, Shirasaki discloses a "*full color polymer OLED display driven by a-Si:H TFT utilizing a*

5    *new current-programmed method*" (Shirasaki, title).  Shirasaki discloses an OLED display for

TV monitor application and "*the panel for this application is required to be driven by an active-*

*matrix (AM) method and to have a larger panel-size*" (INTRODUCTION, *Id*).



Fig.1 3 Tr pixel driver circuit



Fig.2 Timing diagram

-Figs. 1 and 2 of Shirasaki.

10    Shirasaki discloses:

Figures 1 and 2 show a pixel driver circuit and a timing diagram of the
signals, respectively.  At the beginning of the select periods, the data line is
grounded by $V_{reset}$ to discharge the data line and the OLED anode.  Then $I_{data}$ is set
to the pixel circuit with a sink mode.  To prevent the current flow through the
15    OLED, $V_{source}$ is also grounded and the OLED is biased reversely. Therefore $I_{data}$
corresponds to $I_{T3}$ and $C_S$ stores the voltage to keep the $I_{T3}$.  During the hold
period, $V_{source}$ is set to be $V_{cc}$ and $I_{T3}$ keeps flowing according to the voltage on $C_S$.

-Pixel Circuit and A set of Timing, p.1 or p. 1665, *Id*.

Control Number: 90/014,831                                                                    Page 25
Art Unit: 3992

Table 1 of Shirasaki discloses that its display includes a matrix comprising 160 columns and 128 rows of pixels and its "3-TFT and 3-busline pixel circuits" provided for each of the 160X128 pixels. For example, for each pixel of the display panel, there is one pixel driver circuit shown in Fig. 1. Because Shirasaki discloses a 2.1inch OLED display (Fig. 5) with
5    plurality of pixels, Shirasaki discloses a plurality of pixel driver circuits. Further, the $V_{select}$ lines are the selection scan lines, and for each row of pixels, there will be one $V_{select}$ line (Fig. 1, *Id*). The $I_{data}$ lines are the current lines and for each column of pixels, there is one $I_{data}$ line (Fig. 1, *Id*) and the $I_{data}$ lines correspond to $I_{T3}$ and Cs stores the voltage to keep the $I_{T3}$. Shirasaki discloses "a selection scan driver" for $V_{select}$ that provides the signals disclosed in Fig. 2.

10   Shirasaki discloses that a data driving circuit applies a reset voltage to said plurality of current lines in a first part of the selection period (Fig. 2, Vreset is applied in the first part of the selection period) and that in the "selection period", each of the "pixel circuits loads the designating current ($I_{data}$) which flows through said plurality of current line" and each pixel circuit stores a level of a voltage converted in accordance with the current value of the
15   designating current (Cs stores the voltage to keep the $I_{T3}$).

Shirasaki discloses at the end of select period, $I_{data}$ no longer flows to the pixel (Fig. 2). Shirasaki further explains that during the "hold" period (Fig. 2), "$V_{source}$ is set to be $V_{cc}$ and $I_{T3}$ keeps flowing according to the voltage on Cs" (p. 1 or p. 1665, *Id*).

Control Number: 90/014,831                                                                 Page 26
Art Unit: 3992

## Table 1 Specifications

| Items | Specification | |
|---|---|---|
| Size  (Diagonal) | 5.2 (2.1) | cm (inch) |
| Dot format | 160(H)×RGB×128(V) | dot |
| Dot pitch | 0.252(H)×0.252(V) | mm |
| Flame frequency | 30 | Hz |
| Color arrangement | RGB-stripe | |
| Input signal | RGB each 6-bit | |
| CIE Color Coordinate | R (0.69, 0.31) | |
| | G (0.40, 0.58) | |
| | B (0.15, 0.15) | |
| Contrast Ratio | > 100 : 1 | |

-Table. 1 of Shirasaki.

As explained above and shown in Figs. 1-2 and above cited paragraph of Shirasaki,

5   Shirasaki discloses or suggests

   storing, in the plurality of pixel circuits, the current value of the designating currents flowing through the plurality of current lines; and after supplying the designating currents, allowing the plurality of pixel circuits to supply, to the plurality of light-emitting elements, driving currents having current
10   value corresponding to the stored current value of the designating currents.


**TSM-motivation**

Shirasaki discloses:

15   There are two ways to compensate the TFT threshold voltage variation, current-program [2] and voltage-program [3]. Both of them needed more than four TFTs; and four bus-lines for each pixel. in general, which is too complicated in driving scheme and too busy in pixel aria to achieve the high reliability and large aperture ratio. Simpler circuit design and driving scheme are expected in a-
20   Si TFT driving AM--OLED, In SID'03 three TFT voltage-program pixel circuit was presented using in 20 inch a-Si TFT AM-OLED [4]. This driving technology makes possible to drive large-sized AM-OLED utilizing a-Si TFT.

   -Introduction,  Shirasaki.

25

Control Number: 90/014,831                                                                    Page 27
Art Unit: 3992

It is desirable to be able to drive a large-size AM-OLED and have a simpler driving

scheme to achieve high reliability and large aperture ratio. Therefore it would have been obvious

to one of ordinary skills in the art, at the time of invention of the `042 Patent to use Shirasaki's

algorithm of data driving in data driving circuits and the algorithm of the pixel circuits in the

5    display device of Sato so that large-size AM-OLED can be driven with high reliability and large

aperture ratio.


**KSR-motivation**

The combination of Sato with Shirasaki is supported by KSR rationale - (C) Use of

10    known technique to improve similar devices (methods, or products) in the same way because: (1)

as discussed above, Sato teaches a method performing in a base device that is the same as the

invention, except for improvements, such as, the features noted as missing above; (2) Sato and

Shirasaki are similar methods performed by similar devices; and (3) the references show that a

POSITA at the time of the invention had the skill set and could apply Shirasaki's method of

15    operating the data driving circuits and pixel circuits to improve the base device of Sato in the

same way with predictable results or (B) Simple substitution of one known element for another

to obtain predictable results because substituting the algorithm of the data driving circuits and the

algorithm of the pixel circuits of Sato by that of Shirasaki will obtain predictable results.


20    **B.**      **Claims 1-6 and 10-11 are rejected under pre-AIA 35 U.S.C. § 103(a) as being**

**unpatentable over Shirasaki in view of Sato.**

**Summary of Rejection.** Shirasaki discloses the selection scan lines, the current lines,

the pixel circuits and the algorithm performed by the pixel circuits. However, Shirasaki does not

expressly disclose the selection scan driver, the data driving circuits and their algorithms. The

secondary reference of Sato discloses the selection scan driver and the data driving circuits and their algorithms.

Regarding claim 1, Shirasaki teaches a display device comprising:

5     a plurality of selection scan lines ($V_{select}$ bus lines, Fig. 1 and 5, Table 1, there must be a plurality of $V_{select}$ because there are 128 rows of pixels and there is one for each row of pixels. See also Fig. 2);

a plurality of current lines ($I_{data}$ lines is the current used to program the pixel, Fig. 1 and 5, Table 1, there must be a plurality of $I_{data}$ lines because there are 160 column of pixels and

10     there is one for each column of pixels. See also Fig. 2);

a selection scan driver which sequentially selects said plurality of selection scan lines in each selection period ("*the panel for this application is required to be driven by an active-matrix method,*" p. 1 or p. 1665, see Fig. 2 which shows in a selection period, a $V_{select}$ is turned on to drive the display. Each row of pixels requires one selection scan line $V_{select}$.);

15     a data driving circuit which applies a reset voltage to said plurality of current lines in a first part of the selection period (Fig. 1, each column of pixels requires a $I_{data}$ and $V_{reset}$ line, "*at the beginning of the select period, the data line is grounded by $V_{reset}$ to discharge the data line and the OLED anode.*" p.1 or p. 1665, Fig.2 shows the reset voltage applied during a first part of the selection period), and supplies a designating current having a current value corresponding to

20     an image signal to said plurality of current lines in a second part of the selection period after applying the reset voltage in the selection period (Fig. 2 shows after Vreset is set to ground, current $I_{data}$ is supplied. See also p. 1 or p. 1665. Also inherent because "*active matrix driving*

*method"* at p. 1 or p. 1665 must supplies a designating current having a current value corresponding to an image signal. Fig. 1); and

a plurality of pixel circuits which are connected to said plurality of selection scan lines and said plurality of current lines (Fig. 1, each pixel circuit is connected to a selection scan line

5   ($V_{select}$) and a current line ($I_{data}$/$V_{reset}$). Table 1, because a display panel with 160X128 pixels is disclosed, there are a plurality of pixel circuits. The pixel circuits are "*3-TFT and 3 busline pixel circuits.*" Abstract, p. 1 or p. 1665 ), and supply a driving current having a current value corresponding to the current value of the designating current which flows through said plurality of current lines ("*Then Idata is set to the pixel circuit with a sink mode. To prevent the current*

10   *flow through the OLEO, $V_{source}$ is also grounded and the OLED is biased reversely.*" p. 1 or p. 1665. See also Fig. 2);

wherein in the selection period, each of said plurality of pixel circuits loads the designating current which flows through said plurality of current lines ("*Then Idata is set to the pixel circuit with a sink mode. To prevent the current flow through the OLEO, $V_{source}$ is also*

15   *grounded and the OLED is biased reversely.*" p. 1 or p. 1665, see also Fig. 2), and stores a level of a voltage converted in accordance with the current value of the designating current ("*Therefore $I_{data}$ corresponds to $I_{T3}$ and Cs stores the voltage to keep the $I_{T3}$*", p. 1 or p. 1665, the storage capacitor Cs stores a voltage that corresponds to the designating current), and after the selection period, each of said plurality of pixel circuits shuts off the designating current which

20   flows through said plurality of current lines, and supplies a driving current corresponding to the level of the voltage converted in accordance with the designating current ("*during the hold period, $V_{source}$ is set to be $V_{cc}$ and $I_{T3}$ keeps flowing according to the voltage on Cs*", p. 1 or p. 1665. See also Fig. 2).

  Shirasaki discloses a display panel with 160x128 pixels implemented by the 3-TFT and 3-buslines pixel circuits in Fig. 1 (see also Table 1, p. 1 or p. 1665). Shirasaki also uses "an active matrix driving" method (p. 1 or p. 1665). To the extent that Shirasaki does not inherently disclose the structure of the selection scan driver and the data driving circuits as disclosed by the

5  `042 Patent for performing the functions as recited in claim 1 by these two components respectively, Sato discloses or suggests the structure of the selection scan driver and the data driving circuits as explained below.

  In the same field of display devices and display driving method (p. 1), Sato discloses a display panel circuits shown in Fig. 1 with a selection scan driver comprising shifter registers

10  ("*the selection scanning driver 5 is formed of a so-called shifter register.*" p. 24) and the data driving circuits comprising a data driver (3 in Fig. 1) and a current/voltage changeover portion 7.

  A POSITA would have recognized that Sato's use of selection scan driver and a data driving circuit would readily apply to Shirasaki's device, which also discloses a pixel circuit connected to a signal line that alternates between $V_{reset}$ and $I_{data}$.

15  A POSITA would have understood that a straightforward way to implement Shirasaki's selection scan driver and the data driving circuits of providing the reset voltage $V_R$ followed by the designating current $I_{data}$ on the same signal line would be through Sato's disclosed selection scan driver and data driving circuit, which also provides both a reset voltage and a designating current to the same signal line. This would have been nothing more than the use of a known

20  technique in a known device, and one of only a few well-known and understood possibilities for implementing the provision of multiple signals on the same signal line with the timings disclosed by Shirasaki.

A POSITA would have further recognized that the results would be predictable and would have had a reasonable expectation of success, because as explained above Sato discloses that its data driving circuit provides both a reset voltage and a designating current to a current line connected to the same pixel circuit disclosed in Shirasaki. See also MPEP 2143.

5      Therefore it would be obvious to a POSITA, at the time of invention of the `042 Patent, to implements the circuits of Shirasaki as that in Sato to have a complete display panel.

Regarding claim 2, Shirasaki in view of Sato teach the apparatus according to claim 1, wherein said data driving circuit comprises: a switch which switches to a state in which the reset

10      voltage is applied to said plurality of current lines in the first part of the selection period (Sato, $S_1, \ldots, S_n$ in Fig. 1); and a current source driver which supplies the designating current having the current value corresponding to the image signal after the reset voltage is applied by the switch within the selection period (Sato, Data Driver 3 in Fig. 1, "*the gradation designating current is the sink current flowing to the data driver 3 from the signal lines Y1 to Yn via the*

15      *current terminals $OT_1$ to $O_{Tn}$, and is equal to the current value of the current flowing through the organic EL elements $E_{1,1}$ to Em,n in order to emit the light at the luminance gradation in accordance with image data.*", p. 27:5-12. See also p. 39:9-15, p. 40:16-24, see also Fig. 8, *Id*).

Regarding claim 3, Shirasaki in view of Sato teach the apparatus according to claim 1,

20      further comprising a plurality of light-emitting elements which are arranged at intersections of said plurality of selection scan lines and said plurality of current lines (Sato, $E_{i,j}$ shown in Fig. 1), emit light at luminance corresponding to a current value of a driving current (Sato, p. 1:10-11, "*the emission luminance is set in accordance with the current value of a gradation signal*

*outputted from the data driver 3*." p.20:15-18,  p. 27:),  and each have two electrodes one of which is connected to a corresponding  one of said plurality  of pixel circuits (Sato, Fig. 1; Shirasaki, Fig. 1).

5        Regarding  claim 4, Shirasaki  in view of Sato teach the apparatus according to claim 3, wherein the reset voltage applied  by the data driving  circuit is set equal to or lower than a voltage of the other electrode of the light-emitting  element( Shirasaki  discloses that the reset voltage applied  by the data driving  circuit (Vreset) is ground, which is equal to the voltage of the "other electrode of the light-emitting  element" (i.e., the cathode, which is also grounded). For example,

10      Shirasaki  discloses that Vreset is ground:  "*At the beginning  of the select period,  the data line is grounded  by Vreset  to discharge  the data line and the OLEO anode.*"  P. 1 or p. 1665, Shirasaki.)

        Regarding  claim 5, Shirasaki  in view of Sato teach the apparatus according to claim 1,

15      further comprising:  a plurality  of voltage supply  lines (Sato, $Z_1$-$Z_m$, Fig. 1; Shirasaki,  $V_{source}$ lines); and a voltage supply  driver (Sato, power supply scanning  driver 6, Fig. 1; Shirasaki,  the driver that supplies  $V_{source}$) which sequentially  selects said plurality  of voltage supply  lines in synchronism  with the sequential  selection  of said plurality  of selection scan lines by the selection scan driver (Sato, Fig. 8, $V_{ON}$ and $V_{DD}$ are synchronized;  Shirasaki,  Fig. 2, see the

20      synchronization  between $V_{select}$ and $V_{sournce}$).

        Regarding  claim 6, Shirasaki  in view of Sato teach the apparatus according to claim 5, wherein each of said pixel circuits comprises:

Control Number: 90/014,831                                                                 Page 33
Art Unit: 3992

a first transistor having a gate connected to the selection scan line (Sato, 21 is connected to $X_1$;  Shirasaki,  $T_2$ is connected to the bus line  $V_{select}$, Fig. 1), and a drain and source one of which is connected to the current line (Sato, Fig. 1, source terminal of 21 is connected to $Y_1$; Shirasaki, source terminal of $T_2$ is connected to the bus line  $I_{data}$, Fig. 1);

5          a second transistor having a gate connected to the selection scan line, and a drain and source one of which is connected to the voltage supply line (Sato, Fig. 1, 22 in Fig. 1; Shirasaki, Fig. 1, $T_1$ in Fig. 1);

a driving transistor having a gate connected to the other of the drain and source of the second transistor, and a drain and source one of which is connected to the voltage supply line, and the other of which is connected to the other of the drain and source of the first

10       transistor(Sato, Fig. 1, 23 in Fig. 1; Shirasaki, Fig. 1, $T_3$ in Fig. 1); and

a capacitor which stores a gate-to-one of source and drain voltage of the driving transistor by holding the voltage (Sato, Fig. 1, 24 in Fig. 1; Shirasaki, Fig. 1, Cs in Fig. 1, p. 1 or p. 1665).

15       Claim 10 is a broader version of claim 3.  Therefore, Shirasaki in view of Sato teach claim 10 as explained above for claim 3.

Regarding claim 11, Shirasaki teaches a display panel driving method comprising:

sequentially selecting a plurality of selection scan lines of a display panel ("*the panel for

20       *this application is required to be driven by an active-matrix method*," p. 1 or p. 1665, see Fig. 2 which shows in a selection period, a $V_{select}$ is turned on to drive the display. Each row of pixels requires one selection scan line $V_{select}$.) comprising a plurality of pixel circuits (Fig. 1, each pixel circuit is connected to a selection scan line ($V_{select}$) and a current line ($I_{data}/V_{reset}$). Table 1,

Control Number: 90/014,831                                                   Page 34
Art Unit: 3992

because a display panel with 160X128 pixels is disclosed, there are a plurality of pixel circuits.

The pixel circuits are "*3-TFT and 3 busline pixel circuits.*" Abstract, p. 1 or p. 1665 ) connected

to the plurality of selection scan lines ($V_{select}$ bus lines, Fig. 1 and 5, Table 1, there must be a

plurality of $V_{select}$ because there are 128 rows of pixels and there is one for each row of pixels.

5   See also Fig. 2) and a plurality of current lines ($I_{data}$ lines is the current used to program the pixel,

Fig. 1 and 5, Table 1, there must be a plurality of $I_{data}$ lines because there are 160 column of

pixels and there is one for each column of pixels.  See also Fig. 2), and a plurality of light-

emitting elements (OLED or OELD in Fig. 1, inherent because each pixel must have one) which

are arranged at intersections of the plurality of selection scan lines and the plurality of current

10  lines (Fig. 1), wherein each of the light-emitting elements emits light at luminance corresponding

to a current value of a current flowing the current line (inherent from the property of an OLED or

OELD);

applying a reset voltage to the plurality of current lines in an initial part of a period in

which each of the plurality of selection scan lines is selected (Fig. 1, each column of pixels

15  requires a $I_{data}$ and $V_{reset}$ line, "*at the beginning of the select period, the data line is grounded by*

*$V_{reset}$ to discharge the data line and the OLED anode.*" p.1 or p. 1665, Fig.2 shows the reset

voltage applied during a first part of the selection period);

after applying the reset voltage, supplying designating currents having current value

corresponding to an image signal to the plurality of current lines (Fig. 2 shows after Vreset is set

20  to ground, current $I_{data}$ is supplied.  See also p. 1 or p. 1665.  Also inherent because "*active*

*matrix driving method"* at p. 1 or p. 1665 must supplies a designating current having a current

value corresponding to an image signal. Fig. 1), and

storing, in the plurality of pixel circuits, the current value of the designating currents

flowing through the plurality of current lines ("*Therefore $I_{data}$ corresponds to $I_{T3}$ and Cs stores

the voltage to keep the $I_{T3}$*", p. 1 or p. 1665, the storage capacitor Cs stores a voltage that

corresponds to the designating current); and

5          after supplying the designating currents, allowing the plurality of pixel circuits to supply,

to the plurality of light-emitting elements, driving currents having current value corresponding to

the stored current value of the designating currents ("*during the hold period, $V_{source}$ is set to be

$V_{cc}$ and $I_{T3}$ keeps flowing according to the voltage on Cs*", p. 1 or p. 1665.  See also Fig. 2)..

          To the extent that Shirasaki does not inherently discloses a plurality of selection scan

10     lines, a plurality of current lines, a plurality of pixel circuits and wherein each of the light-

emitting elements emits light at luminance corresponding to a current value of a current flowing

the current line, Sato discloses them.

          Shirasaki discloses a display panel with 160x128 pixels implemented by the 3-TFT and

3-buslines pixel circuits in Fig. 1 (see also Table 1, p. 1 or p. 1665).  Shirasaki also uses "an

15     active matrix driving" method (p. 1 or p. 1665).  To the extent that Shirasaki does not inherently

disclose a plurality of selection scan lines, a plurality of current lines, a plurality of pixel circuits

and wherein each of the light-emitting elements emits light at luminance corresponding to a

current value of a current flowing the current line, Sato discloses them.

          In the same field of display devices and display driving method (p. 1), Sato discloses a

20     display panel circuits shown in Fig. 1 with a selection scan driver comprising shifter registers

("*the selection scanning driver 5 is formed of a so-called shifter register.*" p. 24) and the data

driving circuits comprising a data driver (3 in Fig. 1) and a current/voltage changeover portion 7.

Sato further discloses each of the light-emitting elements emits light at luminance corresponding

to a current value of a driving current (Sato, p. 1:10-11, "the emission luminance is set in accordance with the current value of a gradation signal outputted from the data driver 3." p.20:15-18, p. 27).

     A POSITA would have recognized that Sato's plurality of selection scan lines and current

5  lines and a plurality of pixel circuits and the use of OLED would readily apply to Shirasaki's device and method to extend the pixel circuits to accommodate a display panel comprising 160X128 pixels.

     A POSITA would have understood that a straightforward way to implement Shirasaki's plurality of selection scan lines and current lines and a plurality of pixel circuits would be

10  through Sato's disclosed scan lines and current lines and pixel circuits, which also provides the method steps as recited in claim 11. This would have been nothing more than the use of a known technique in a known device, and one of only a few well-known and understood possibilities for implementing the provision of data driving by active matrix programming by Shirasaki.

     A POSITA would have further recognized that the results would be predictable and

15  would have had a reasonable expectation of success, because as explained above Sato discloses that the plurality of pixel circuits connected by selection scan lines and current lines provide the same functionality disclosed in Shirasaki. See also MPEP 2143.

     Therefore it would be obvious to a POSITA, at the time of invention of the `042 Patent, to implements the circuits and method of Shirasaki as that in Sato to have a complete display

20  panel.

**C.    Claim 11 is rejected under pre-AIA 35 U.S.C. § 103(a) as being unpatentable over Miyazawa.**

**Summary of Rejection.** This ground of rejection is based on two embodiments of Miyazawa and all the claim limitations are disclosed by the two embodiments of Miyazawa.

Regarding claim 11, Miyazawa discloses a display panel driving method comprising:

5    sequentially selecting a plurality of selection scan lines of a display panel comprising a plurality of pixel circuits connected to the plurality of selection scan lines and a plurality of current lines (Fig. 2, "[0038] *The gate driver 300 selectively drives one of the plurality of gate lines Yn and selects one row of pixel circuits. The data line driver 400 has a plurality of single-line drivers 400 that individually drive the data lines Xm. These single-line drivers 410 supply*

10   *data signals to the pixel circuits 210 over the data lines Xm. When the internal state (to be described below) of each pixel circuit 210 is set via these data signals, the value of the current flowing to each organic EL element 220 is controlled based on such setting, and as a result, the tone of the light emission from each organic EL element is controlled.*" See also ¶¶ [0053] and [0086]-[0088]), and a plurality of light-emitting elements which are arranged at intersections of

15   the plurality of selection scan lines and the plurality of current lines, wherein each of the light-emitting elements emits light at luminance corresponding to a current value of a current flowing the current line (Fig. 2, ¶ [0037] "…*each pixel circuit 210 has an organic EL element 220.*" ¶ [0059], "*Because the voltage corresponding to the programming current value Im is stored in advance in the holding capacitor 230, a current that is essentially equivalent to the*

20   *programming current value Im flows to the fourth transistor 214. Therefore, a current that is essentially equivalent to the programming current value Im also flows to the organic EL element 220, which emits light having a tone corresponding to this current value Im.*");

applying a reset voltage to the plurality of current lines in an initial part of a period in

which each of the plurality of selection scan lines is selected (Figs. 13(a)-13(e), ¶ [0087],

*"During the first half of the programming period Tpr, voltage programming is executed through*

*the supply of a voltage signal Vout (see FIG. 13(c)) from the voltage generating circuit 411d to*

5  *the data line Xm. When this is done, the data line Xm is charged or discharged and the holding*

*capacitor 230 is charged or discharged accordingly."* See also Fig. 13 which shows the timing

chart and ¶¶ [0043]-[0044] and [0086] and [0088]);

after applying the reset voltage, supplying designating currents having current value

corresponding to an image signal to the plurality of current lines (¶ [0087], *"During the second*

10  *half of the programming period Tpr, the holding capacitor 230 is accurately programmed*

*through the supply of a current signal Iout (FIG. 13(d)) from the current generating circuit*

*412d."* see also Fig. 13 and ¶¶ [0056]-[0057] and [0088]), and

storing, in the plurality of pixel circuits, the current value of the designating currents

flowing through the plurality of current lines (¶ [0087], *"During the second half of the*

15  *programming period Tpr, the holding capacitor 230 is accurately programmed through the*

*supply of a current signal Iout (FIG. 13(d)) from the current generating circuit 412d."* see also

Fig. 13 and ¶¶ [0057]-[0059] and [0088]); and

after supplying the designating currents, allowing the plurality of pixel circuits to supply,

to the plurality of light-emitting elements, driving currents having current value corresponding to

20  the stored current value of the designating currents (Fig. 13 and ¶¶ [005]-[0059] and [0042],

*"The holding capacitor 230 maintains an electric charge commensurate with the current value of*

*the current signal Iout supplied thereto via the second sub-data line U2, and thereby adjusts the*

*tone of the light emission from the organic EL element 220. In this example, the first through*

*third transistors 211-213 are n-channel FETs, while the fourth transistor 214 is a p-channel*

*FET. Because the organic EL element 220 is a current infusion (current-driven) type light-*

*emitting element similar to a photodiode, it is expressed in the figure using a diode symbol.*")*.

The cited disclosures above are from Embodiment 1 and Embodiment 5 of Miyazawa.

5    Miyazawa discloses:

[0086] FIG. 12 is a circuit diagram showing the internal constructions of a pixel circuit 210d and a single-line driver 410d of a fifth embodiment. This pixel circuit 210d is identical to the circuit shown in FIG. 4. In other words, the fifth embodiment does not have the two switching transistors 251 and 252 that were present in the first embodiment (see FIG. 3). Furthermore, the sub-gate line V1 used for the transistors 251 and 252 is also omitted. The single-line driver 410d and its internal circuits 411d and 412d are identical to the equivalent circuits in the first embodiment shown in FIG. 3. However, the fifth embodiment differs from the first embodiment in that the voltage generating circuit 411d and the current generating circuit 412d are commonly connected to the pixel circuit 210d via a single data signal line Xm.

[0088] … In the fifth embodiment in particular, current programming is executed after the completion of voltage programming using the same single data line Xm. During voltage programming, a kind of pre-charge is executed with respect to both the data line Xm and the holding capacitor 230, whereupon current programming is executed. Therefore, the light emission tone can be set more accurately and quickly than is possible using the pixel circuit of the conventional art.

-¶¶[0086] and [0088] of Miyazawa.

As disclosed by Miyazawa above, Embodiment 5 is merely modifying some structure of

the pixel circuits and programming of the driving circuits and is based on Embodiment 1 with

improvements.

Therefore it would be obvious to POSTIA, at the time of invention of the `042 Patent, to

combine the teaching of Embodiment 5 of Miyazawa with the Embodiment 1 of Miyazawa or

modify the Embodiment 1 of Miyazawa to arrive at Embodiment 5 of Miyazawa so that the light

Control Number: 90/014,831                                                    Page 40
Art Unit: 3992

emission tone can be set more accurately and quickly than is possible using the pixel circuit of

the conventional art.

The combination of Embodiment 1 and Embodiment 5 of Miyazawa is also supported by

KSR Rationale (C) Use of known technique to improve similar devices (methods, or products) in

5    the same way because using the techniques in Embodiment 5 of Miyazawa will improve

Embodiment 1 of Miyazawa because the light emission tone can be set more accurately and

quickly.

## VIII. EX PARTE REEXAMINATION REMINDER

### A.     Specific Explanation of Support Must be Provided

10   37 CFR 1.530 (e) states:

> (e) Status of claims and support for claim changes. Whenever there is an
> amendment to the claims pursuant to paragraph (d) of this section, there must also
> be supplied, on pages separate from the pages containing the changes, the status
> (i.e., pending or canceled), as of the date of the amendment, of all patent claims
15  and of all added claims, and an explanation of the support in the disclosure of the
> patent for the changes to the claims made by the amendment paper.

In other words, explanation of support of changes made to claims including amended

claims and new claims must be provided and specific.

20

### B.      Amended Claims or New Claims Cannot be Broadened.

37 CFR 1.552 (b) states:

> (b) Claims in an ex parte reexamination proceeding will not be permitted to
> enlarge the scope of the claims of the patent.
25

MPEP 2258 states:

> A reexamination proceeding ordered under 35 U.S.C. 304 provides a complete
> reexamination of the patent claims on the basis of prior art patents and printed

Control Number: 90/014,831                                                                                          Page 41
Art Unit: 3992

publications. Double patenting issues may also be considered during reexamination. See subsection I.D. below. Issues relating to 35 U.S.C. 112 are addressed only with respect to new claims or amendatory subject matter in the specification, claims or drawings. Any new or amended claims are examined to ensure that the scope of the original patent claims is not enlarged, i.e., broadened. See 35 U.S.C. 305.

Therefore the Patent Owner is reminded that any new or amended claims cannot be broadened.

## IX. NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS

37 C.F.R. § 1.33(c) states:

(c) All notices, official letters, and other communications for the patent owner or owners in a reexamination or supplemental examination proceeding will be directed to the correspondence address in the patent file.

The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 C.F.R. § 1.33(c), automatically changed to that of the patent file as of the effective date.

In the event the patent owner's correspondence address listed in the papers (record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

Reexamination                                               (571) 272-7703

Control Number: 90/014,831                                                    Page 42
Art Unit: 3992

# X. CONCLUSION

Extensions of time under 37 C.F.R. § 1.136(a) will not be permitted in these proceedings because the provisions of 37 C.F.R. § 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that ex parte reexamination proceedings "will be conducted with special dispatch" (37 C.F.R. § 1.550(a)). Extensions of time in ex parte reexamination proceedings are provided for in 37 C.F.R. § 1.550(c).

Patent owner is reminded of the continuing responsibility under 37 C.F.R. § 1.565(a), to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the 538 patent throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286. The third party requester is similarly apprised of the ability to disclose such proceedings.

Registered users of EFS-Web may alternatively submit correspondence via the electronic filing system at https://efs.uspto.gov/efile/nwportal/efs-registered

Signed:

/YUZHEN GE/
Primary Examiner, Art Unit 3992


Conferees:

/NICK CORSARO/
Primary Examiner, Art Unit 3992

/ANDREW J. FISCHER/
Supervisory Patent Reexamination Specialist, Art Unit 3992